IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

SEFIDKAR JANALI #12202-078                                                      PLAINTIFF

VERSUS                                              CIVIL ACTION NO.  5:11cv119DCB-JMR

CORRECTIONS CORPORATION
OF AMERICA, *ET AL.*                                                         DEFENDANTS

## REPORT AND RECOMMENDATION

This matter is before the Court pursuant to Defendants' Motion for Summary Judgment [11] filed in this case.  Also before the Court is the Motion to Compel [28] filed by Sefidkar Janali [Janali]. The Court being fully advised in the premises, and after carefully considering the pleadings filed as a matter of record, along with the applicable law, makes the following recommendations.

## STATEMENT OF THE CASE

Janali, a Shia Muslim, filed this *pro se* Complaint, alleging violations of his civil rights, pursuant to 42 U.S.C. § 1983, while lawfully in the Adams County Correctional Facility [ACCF]. [1.] Specifically, Plaintiff alleges that he should be allowed to pray apart from other Islamic factions. [1, p. 4.] He contends that other religious denominations are allocated different prayer times yet the chaplain refused to grant his request for separate prayers.  (*Id*.)  He claims that currently the Jummah Prayer is presided by an inmate Sunni Muslim Imam which is a different denomination than the religion Janali practices. (*Id*.) In addition, he asserts that he has not been provided a lawful Muslim diet in violation of his rights under the First Amendment's Free Exercise Clause. [1, p. 5.] Janali contends that when he first arrived at the facility he was told he could either eat regular meals, vegetarian meals or Jewish Kosher meals.  (*Id*.) Janali chose the Kosher diet, since it is similar to the Halal diet.  (*Id*.) Chaplain "Shonebarger" later

took Janali off the Kosher diet when it was reported that Janali purchased clams in the commissary, although clams are not forbidden as part of a Halal diet, according to Janali. (*Id*.) Janali claims that his First Amendment rights to free exercise of his religion were violated and his Fifth Amendment right to equal protection under the law was violated. [1, p. 6.] He seeks an order from the court that the defendants "stop refusing to assign a specific time and place for Shia Muslim praying and to provide Sefidkar with the Halal diet required by my Muslim faith." (*Id*.)

The Defendants assert that Janali's free exercise rights are not violated simply because the ACCF has only one Muslim religious service. [12, p. 2.] The Defendants argue that a correctional facilities regulation of an inmate's religious exercise must be reasonably related to a legitimate penological interest. (*Id*.) Jon Thomas Shonebarger, Jr., [Shonebarger] the chaplain at the ACCF, avers that Muslims at the facility are allowed unlimited time for independent study and worship. [11-1, p. 1.] Inmates are allowed to have Kufi caps, religious oils, prayer rugs and personal copies of the Koran, and are allowed to attend Ta-Leen and Jum'ah services each week, and to celebrate Ramadan. (*Id*.) No sectarian worship services are allowed at the facility because of limited resources and security. (*Id*., p. 2.) Shonebarger indicates that if the facility allowed separate services for each religious sect housed at the ACCF, there would be a threat to security because of the potential for sectarian violence, as would dividing Shia and Sunni Muslims within the inmate population. (*Id*.) No other religion at the ACCF is allowed to have sectarian services. [11-1.] Janali was offered the opportunity to take a week in the rotation of leading services and he declined the offer. (*Id*.)

Shonebarger asserts that Muslim inmates at the facility are allowed to be on either a

2

vegetarian or Kosher diet. (*Id*.) If a Muslim inmate chooses the Kosher diet, that inmate "must follow all Kosher or Jewish dietary laws." (*Id*.) When Janali ordered clams from the commissary, which are not lawful under Jewish law, Janali was taken off the Kosher diet. (*Id*.) The Defendants assert that Janali is not treated differently than any other similarly situated inmate and has not shown any discriminatory intent in the actions of the Defendants. (*Id*., p. 6.)

## STANDARD OF REVIEW

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. FED. R.CIV.P. 56(c). "The mere existence of a factual dispute does not by itself preclude the granting of summary judgment." *St. Amant v. Benoit*, 806 F.2d 1294, 1296-7 (5th Cir. 1987).

"The requirement is that there be no <u>genuine</u> issue of <u>material</u> fact." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). In other words, "[o]nly disputes over the facts that might effect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Furthermore, it is well settled in this circuit that bare allegations are insufficient to withstand summary judgment because the opposing party must counter factual allegations by the moving party with specific, factual disputes. *Stafford v. True Temper Sports*, 123 F.3d 291, 295-6 (5th Cir. 1997). In considering a motion for summary judgment, the court views the evidence in the light most favorable to the party resisting the motion. *Prison Legal News v. Livingston*, 683 F.3d 201, 211 (5th Cir. 2012). To avoid the entry of summary judgment, the

3

non-moving party must bring forth significant probative evidence demonstrating the existence of a triable issue of fact. *Whitt v. Stephens County*, 529 F.3d 278, 283 n.8 (5th Cir. 2008).

## ANALYSIS

A suit against a governmental agent or officer in his official capacity is a suit against the office that the employee holds and not against the actual employee. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985). Janali sued ACCF, Vince Laughlin, Warden of the facility; Shonebarger, Chaplain at the facility; and Ms. Orsolits, Assistant Warden at the facility. [1] To the extent that Janali seeks monetary relief from the individual defendants sued in their official capacities, the Eleventh Amendment bars these claims. *See Kahey v. Jones*, 836 F.2d 948, 949 (5th Cir. 1988). The Court recommends that all claims against individual defendants sued in their official capacities for monetary relief be dismissed.

I.   Constitutional Claims

A.   First Amendment Claims

The Free Exercise Clause of the First Amendment to the United States Constitution requires noninterference by the government with the religious beliefs and practices of individuals. *Cutter v. Wilkinson*, 544 U.S. 709, 719 (2005). A prisoner retains only those First Amendment freedoms which are "not inconsistent with his status as a prisoner or with legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). A prison regulation which impinges on an inmate's constitutional rights is valid if it is reasonably related to legitimate penological interest. *Turner v. Safley*, 482 U.S. 78, 89 (1987). The court must consider four factors in deciding in determining the reasonableness of the regulation: (1) whether a valid and rational connection exists between the prison regulation and

4

the legitimate governmental interest put forward to justify it; (2) whether there are alternative means of exercising the right that remain open to prison inmates; (3) the impact of the accommodation on prison guards, other inmates and the allocation of prison resources generally; and (4) whether there are "ready alternatives" to the regulation in question. *Turner*, 482 U.S. at 89-90. Prison officials are afforded great deference in making decisions regarding jail security. *Oliver v. Scott*, 276 F.3d 736, 745 (5th Cir. 2002).

B.  Shia Muslim Worship Services

Janali advances two chief complaints about the free exercise of his religion. First, Janali claims his free exercise rights were denied because there is not a Shia Muslim religious service offered at the prison. [14, p. 17.] Janali argues that the alternative of individual prayer is not the least restrictive alternative to group worship services. (*Id.*) The Court considers the *Turner* factors outlined above, bearing in mind that rationality is the controlling factor, and that each factor is not weighed equally. *See Scott v. Miss. Dep't of Corr.,* 961 F.2d 77, 81 (5th Cir. 1992).

The Defendants maintain that Janali's faith is accommodated because inmates are allowed to have Kufi caps, religious oils, prayer rugs and personal copies of the Koran, and are allowed to attend Ta-Leen and Jum'ah services each week. [11, Exh. A.] No sectarian worship services are allowed at the facility because of limited resources and security. (*Id.*, p. 2.) Shonebarger indicates that if the facility allowed separate services for each religious sect housed at the ACCF, there would be a threat to security because of the potential for sectarian violence, as would dividing Shia and Sunni Muslims within the inmate population. (*Id.*) Janali was offered the opportunity to take a week in the rotation of leading services and he declined the offer. (*Id.*)

A restriction on an inmate's First Amendment religious rights is valid if it is reasonably

5

related to legitimate penological interests. *See O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987) (quoting *Turner,* 482 U.S. at 89. A prisoner's right to free exercise of his religion "may be curtailed in order to achieve legitimate correctional goals or to maintain prison security." *O'Lone,* 482 U.S. at 348. The Court concludes that the ACCF has a neutral policy regarding free exercise rights for assembly of religious groups. The policy in place is rationally related to legitimate government objectives. *Freeman v. Texas Dep't. Of Criminal Justice*, 369 F.3d 854, 861 (5th Cir. 2004). Shonebarger has averred that the decision to allow separate service is influenced by security concerns and limited prison resources. [11, Exh. A.] Janali has alternative means of exercising his religion, has access to religious materials and is able to privately hold and attend live services. The policies at issue in this case are connected to concerns of security, staff and space limitations, and the lack of other alternatives. *Baranowski v. Hart*, 486 F.3d 112, 121 (5th Cir. 2007), *cert. denied* 552 U.S. 1062. Janali can worship in his cell using religious materials and can access the chapel on certain days and times, which are acceptable alternative methods of exercising his right to worship. *See O'Lone*, 482 U.S. at 351-2.

The record reflects that it would be burdensome to staff and threaten security for the ACCF to accommodate every religion without some limitations. Finally, there is no evidence of an alternative that would fully accommodate Plaintiff's needs at a *de minimis* cost to valid penological concerns. *See Mayfield v. Texas Dept. Of Criminal Justice*, 529 F.3d 599, 607 (5th Cir. 2008) (quoting *Turner,* 482 U.S. at 89-91). Accordingly, the Court recommends that the defendants' Motion for Summary Judgment on Janali's claims regarding any First Amendment claims regarding separate Shia Muslim religious services should be granted.

C.    <u>Muslim Diet</u>

Janali asserts that when he sought accommodation for a Muslim diet, he was told that the "Common Fare" or "Halal Diet" were not available at ACCF. [1, p. 5.] Janali was told he could either chose a vegetarian or Jewish Kosher diet to accommodate his religious dietary restrictions, and Janali stated he chose a Kosher diet. (*Id*.) He claims that he was taken off the Kosher diet when he bought clams from the prison commissary. (*Id*.) Janali contends that Shonebarger "forced" him to follow another religion's dietary laws, and refused to allow Janali a Halal diet. (*Id*.) Janali claims that Shonebarger's refusal to provide a Halal diet while providing a Jewish diet to Jews is different treatment of those individuals professing a Muslim faith, and discriminatory. (*Id*.) In differentiating the treatment of Muslims, Janali asserts that the Defendants are violating his rights to free exercise of his religion and to be treated equally under the law. (*Id*.) Janali seeks a court order for the defendants to stop refusing to provide a specific time and place for Shia Muslim praying and to provide Janali with a Halal diet. [1, p. 6.]

A prisoner's rights under the First Amendment's Free Exercise Clause are implicated when a prison official, without justification which is reasonably related to a legitimate penological interest, burdens that prisoner's practice of his religion by preventing him from engaging in conduct which he sincerely believes is consistent with his faith. *See Eason v. Thaler,* 14 F.3d 8, 10 (5th Cir. 1994). The Court must weigh the first factor in the *Turner* test, whether there is a rational relationship between the regulation and the legitimate government interest advanced, as the controlling question, with the other factors merely a help to a court to determine if the connection is logical. *Scott,* 961 F.2d at 81 (commenting that neither *Turner* nor *O'Lone* require courts to weigh evenly, or even consider the other three factors). In this case, the Defendants have established that an accommodation is available for Janali's dietary needs, and

that if his request was honored a floodgate of demands would result from each of the numerous religions present at the ACCF. [19, p. 3.; 11-1.] This would result in an undue burden on the prison system, which is not required under the law. [19, p. 3.] An inmate is entitled to reasonable accommodation of their religious dietary needs, however prisons need not respond to a particularized religious dietary request. *Udey v. Kastner*, 805 F.2d 1218, 1220-21 (5th Cir. 1986). A legitimate government interest is one which focuses on a simplified prison food service rather than a full-scale restaurant.

The impact of providing an individualized diet on prison resources is such that prevents providing special food and food preparation services at the prison and to prevent the influx of many other requests should Janali be accommodated in his demands. The Court finds that the restrictions present at the ACCF are rationally related to legitimate penological interests, and provides proper nutritious meals to all the prisoners without undue cost. *Baranowski v. Hart,* 486 F.3d 112, 122 (5th Cir. 2007) (holding that prison officials failure to provide kosher meals did not violate inmates free exercise rights). The Court, therefore, recommends that the Defendants' motion for summary judgment on Janali's claims relating to his prison diet should be granted. *See Turner,* 482 U.S. at 90 ("When accommodation of an asserted right will have a significant 'ripple effect' on fellow inmates or on prison staff, courts should be particularly deferential to the informed discretion of corrections officials.")

D.  Equal Protection Claim

To establish a violation of the Equal Protection Clause, Janali "must allege and prove that he received treatment different from that received by similarly situated individuals and that the unequal treatment stemmed from a discriminatory intent." *Taylor v. Johnson,* 257 F.3d 470, 473

(5th Cir. 2001); *see City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 439-40 (1985). A "[d]iscriminatory purpose in an equal protection context implies that the decision-maker selected a particular course of action at least in part because of, and not simply in spite of, the adverse impact it would have on an identifiable group." *Woods v. Edwards,* 51 F.3d 577, 580 (5th Cir. 1995). The Fourteenth Amendment requires that all persons similarly situated shall be treated alike, but it does not demand "that every religious sect or group within a prison - however few in numbers - must have identical facilities or personnel." *Cruz v. Beto,* 405 U.S. 319, 322 n.2 (1972).

Janali has failed to offer any evidence to establish that Defendants' reason for denying Janali's requests and for refusing to offer separate services to Janali's sect stemmed from a discriminatory intent. In absence of this evidence, the Court recommends that the motion for summary judgment on Janali's Equal Protection claims should be granted.

II. <u>Claims Against "Supervisory" Defendants</u>

It is well-settled that Section 1983 does not "create supervisory or *respondeat superior* liability." *Oliver,* 276 F.3d at 742 & n.6; *see also Thompkins v. Belt,* 828 F.2d 298, 304 (5th Cir. 1987). Like municipal corporations, a private prison-management corporation such as ACCF is not vicariously liable under a theory of *respondeat superior* for constitutional violations of its employees. *See Olivas v. CCA,* 215 Fed. Appx. 332, 333 (5th Cir. 2007) ( *per curiam* )(citing *Monell v. Dep't of Social Servs.,* 436 U.S. 658, 691 (1978)); *Rosborough v. Management & Training Corp.,* 350 F.3d 459, 461 (5th Cir. 2003)) Thus, ACCF can be held liable under § 1983 only where "an official policy or custom . . . causes or is the moving force of the constitutional violation." *Monell,* 436 U.S. at 694. "[P]rivate prison management companies and their

9

employees may be sued under § 1983 by a prisoner who has suffered a constitutional injury . . . because confinement of wrongdoers . . . is a fundamentally governmental function." *Rosborough,* 350 F.3d at 461.

Janali has failed to establish that there was any official policy or custom that was the moving force of the alleged constitutional violation. Moreover, as discussed above, Janali has failed to establish any constitutional violation in his case. Accordingly, the Court recommends that the Defendants' motion for summary judgment on Janali's claims should be granted and that the lawsuit dismissed in its entirety.

III.  Motion to Compel

The Court has recommended that the Defendants' Motion for Summary Judgment be granted. Janali has an outstanding Motion to Compel Shonebarger to produce the statement of work and/or technical proposal between ACCF and the Bureau of Prisons [BOP] to establish that the ACCF allegedly has violated the statement of work as it relates to religious services. [28, p. 3.] Because the Court recommends that the motion for summary judgment be granted, the Court further recommends that the Motion to Compel be denied as moot.

**CONCLUSION**

Pursuant to the foregoing analysis, this Court finds that the Plaintiff has not presented any evidence which creates a genuine issue of material fact with regard to the Defendants' official or individual liability for a violation of the Plaintiff's constitutional rights. Accordingly, the Court recommends that the Defendants' Motion [11] for Summary Judgment should be granted as to all of the Plaintiff's claims and that all claims against all Defendants should be dismissed with prejudice. In addition, the Court recommends that the Motion to Compel [28]

10

should be denied as moot.

In accordance with the Rules of this Court, any party, within fourteen days, or by no later than September 18, 2012, after being served a copy of this recommendation, may serve and file written objections to the recommendations, with a copy to the District Judge, the U.S. Magistrate Judge, and the opposing party. The District Judge at that time may accept, reject or modify in whole or in part, the recommendation of the Magistrate Judge, or may receive further evidence or recommit the matter to this Court with instructions. Failure to timely file written objections to proposed findings, conclusions, and recommendations contained in this report will bar an aggrieved party, except on the grounds of plain error, from attacking on appeal unobjected to proposed factual findings and legal conclusions accepted by the District Court. *Douglass v. United Services Auto Ass'n*, 79 F.3d 1425 (5th Cir. 1996). A copy of this R & R has been forwarded to petitioner at his last known address by certified mail, return receipt requested.

This the 4th day of September, 2012.

s/ John M. Roper, Sr.  
CHIEF UNITED STATES MAGISTRATE JUDGE