**IN THE UNITED STATED DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**WESTERN DIVISION**

**SEFIDKAR JANALI, #12202-078**                                  **PLAINTIFF**

**VERSUS**                          **CIVIL ACTION NO. 5:11-cv-119-DCB-JMR**

**CORRECTIONS CORPORATION OF AMERICA, ET AL.**          **DEFENDANTS**

**DEFENDANTS'[1] RESPONSE IN OPPOSITION TO PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT**

Plaintiff is not entitled to offensive summary judgment because Defendants have shown in their motions for summary judgment that there is no triable issue of fact and that they are entitled to summary judgment on all claims.  The CCA Defendants adopt and hereby incorporate their second motion for summary judgment [Docket 65] and the supporting memorandum of authorities [Docket 66].

### SUMMARY JUDGMENT STANDARD

When a plaintiff moves for summary judgment on claims he must prove at trial his summary judgment burden is extremely high.  To carry this burden Plaintiff must submit proof that conclusively establishes all of the elements of the claim or defense.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Plaintiff has failed to carry this burden; thus, his summary judgment should be denied.  The defendants' summary judgment standard is much lower than Plaintiff's because defendants must only show that Plaintiff lacks proof on one element of each claim.  As previously demonstrated the CCA Defendants are entitled to summary judgment on all claims.

---

[1] Corrections Corporation of America, Vance Laughlin, Jon Shonebarger, and Victor Orsolits (hereinafter "CCA Defendants")

## FACTS

Plaintiff, who is Muslim, filed this lawsuit asking to be placed on the Jewish diet at the Adams County Correctional Facility ("ACCF").  Plaintiff had been on the Jewish diet previously, but he would not follow the rules of that diet.  Plaintiff also claims his religious rights have been violated because he claims the pork-free diet at ACCF contains pork products.  However, Plaintiff has no admissible proof to support his contention that the ACCF diet contains pork.  See Plaintiff's Responses to Defendants Written Discovery [Docket 65-1].  The only proof in this case of pork products is the Plaintiff's commissary records showing he purchased pork-skins from the prison commissary on multiple occasions.  See Plaintiff's Commissary Records Exhibit "1."

Plaintiff also claims ACCF should have sectarian services for Shia Muslims.  The prison only offers non-denominational or non-sectarian religious services.  There are currently twelve different religions at ACCF.  Chaplain Shonebarger's Affidavit [Document 11-1 ¶ 4].  There are numerous sects or denominations within each religious group that could not be accommodated with separate worship services without compromising security.  Chaplain Shonebarger's Affidavit [Document 11-1 ¶ 4].  To allow services for every sect or denomination would place an incredible burden on the staff at ACCF and could not be done orderly.  Chaplain Shonebarger's Affidavit [Document 11-1 ¶ 5].  Furthermore, Plaintiff's pleadings explain the basic tenets of the Muslim faith, all of which can be met without separate sectarian services.

### A.  *Plaintiff's Free Exercise Clause Claims.*

To determine whether a regulation violates a prisoner's right to freely exercise his religion the question is whether the regulation, "is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987).  In evaluating the reasonableness of a prison

regulation, *Turner* instructs us to consider four factors: (1) whether there is a "valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it"; (2) "whether there are alternative means of exercising the right that remain open to prison inmates"; (3) "the impact accommodation . . . will have on guards and other inmates, and on the allocation of prison resources generally"; (4) whether there are "ready alternatives that could fully accommodate [] the prisoner's rights at de minimis cost to valid penological interests." *Id.* at 89-90.

The CCA Defendants have offered proof on all of these factors; thus, the Plaintiff has not carried his burden of showing that these elements are conclusively established in his favor. To support the first factor "rational connection" the CCA Defendants have submitted Chaplain Shonebarger's affidavit that explains the decision not to allow separate services is driven by security and limited prison resources. Chaplain Shonebarger's Affidavit [Document 11-1 ¶ 5].

The next factor is whether there are alternative means for Plaintiff to exercise his religious rights. As indicated in Chaplain Shonebarger's affidavit Plaintiff can pray individually in his cell, he can meditate in his cell, read literature in his cell, and pray in the chapel when no other service is scheduled. Chaplain Shonebarger's Affidavit [Document 11-1 ¶ 4]. Plaintiff can also attend weekly generic studies and services about the Muslim faith; he can celebrate all special holy days including Ramadan and can possess Kufi caps, religious oils, prayer rugs, and personal copies of the Koran. Chaplain Shonebarger's Affidavit [Document 11-1 ¶ 2]. Plaintiff has also been given the opportunity to lead the weekly Muslim service, but he denied that request. Chaplain Shonebarger's Affidavit [Document 11-1 ¶ 6].

The third factor is what would be the adverse impact if the Plaintiff were accommodated. If Plaintiff's request for separate sectarian services were accommodated then every religious sect

may also request to have separate sectarian services.  Within the twelve religions at ACCF there are a number of different sects.  Chaplain Shonebarger's Affidavit [Document 11-1 ¶ 4].  The Chaplain explains, "in the current ACCC inmate population there are five sects of Judaism; numerous sects of Christianity; three sects of Rastafarianism; and ten sects of Orisha."  Chaplain Shonebarger's Affidavit [Document 11-1 ¶ 4].  To allow a service for every sect would place an incredible burden on the staff at ACCC and could not be done orderly.  Chaplain Shonebarger's Affidavit [Document 11-1 ¶ 5].  Furthermore, to allow sectarian Muslim services may lead to sectarian violence among the Muslim inmate population.  Chaplain Shonebarger's Affidavit [Document 11-1 ¶ 5].  The cost of permitting sectarian services is high and the result would be disorder and reduced security.

The fourth and final factor is "the absence of ready alternatives is evidence of the reasonableness of a prison regulation." This factor also acknowledges that "the existence of obvious, easy alternatives may be evidence that the regulation is not reasonable, but is an 'exaggerated response' to prison concerns."  *Turner*, 482 U.S. at 90 (*citing Block v. Rutherford*, 468 U.S. 576, 587 (1984).  The Plaintiff has not offered any alternative that would alleviate the security, costs, and other concerns his request for sectarian services would create.  Thus, this factor also weighs in the CCA defendants' favor.

Because there is significant evidence to support the reasonableness factors Plaintiff cannot show that there can be no genuinely disputed issue and that he is entitled to judgment in his favor.  In fact, the opposite is true.  The Plaintiff has no evidence that any of the factors should be resolved in his favor.  Thus, the CCA defendants are entitled to summary judgment.

### B.  *Equal Protection*

To prevail on an equal protection claim, a plaintiff must present evidence that he has been treated differently from persons who are similarly situated.  *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985).  As shown in Chaplain Shonebarger's affidavit there are two diets that are lawful for Muslim inmates: the vegetarian diet and the regular inmate diet.  Chaplain Shonebarger's Affidavit [Document 11-1 ¶ 7].  In fact, the majority of the Muslim inmates at ACCF eat the regular prison meal that is free of pork.  *Id.*  Plaintiff has no proof of an equal protection claim.

An equal protection claim also requires a showing of "purposeful discrimination resulting in a discriminatory effect among persons similarly situated."  *Baranowski v. Hart*, 486 F.3d 112, 123 (5th Cir. 2007).  The Plaintiff has failed to allege any facts that would suggest any discriminatory intent and has no proof of discriminatory intent.  The complaint must state "enough facts to state a claim of relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Because the record is devoid of any fact or allegation that would support a plausible showing of discriminatory intent the equal protection claim should be dismissed.

### C.  *Religious Services RLUIPA/RFRA Claims*

The legal standard under RFRA 42 U.S.C. §§ 2000bb et seq., and RLUIPA 42 U.S.C. §§ 2000cc et seq. is the same.  The threshold issue is, "whether the challenged governmental action substantially burdens the exercise of religion."  *Baranowski v. Hart*, 86 F.3d 112 (5th Cir. 2007).  The Plaintiff is required to put forth prima facie evidence of a substantial burden.  *Id.*  In *Adkins v. Kaspar*, 393 F.3d 559 (5th Cir. 2004) the Fifth Circuit held a religious exercise is substantially burdened when the government's action or regulation "truly pressures the adherent to

significantly modify his religious behavior and significantly violate his religious beliefs." *Id.* at 569-70.

There is no proof that having a generic Muslim service truly pressures Plaintiff to violate his religion.  In fact Plaintiff's amended complaint sets forth the principal tenets of Islam and separate services is not required to satisfy any of these five tenets:

> The principal tenets of Islam, **regardless of sect**, are (1) belief that Allah is God; (2) acceptance that the holy Qur'an is the book of guidance and contains the words of Allah; (3) acknowledgement of the Prophet Muhammad as the final messenger and Prophet of Allah; (4) acceptance of the 'five pillars' of Islam—Shahada (declaration of faith), Salat (prayer), Zakat (charity), Saum (fasting) and Hajj (pilgrimage to Mecca); and (5) the practice of Oiblah, or praying facing Mecca.

Plaintiff's Amended Complaint ¶ 22 [Docket No. 52] (emphasis added).  Plaintiff can comply with all of these tenets without having separate sectarian services because these principals apply regardless of sect.  Plaintiff's amended complaint concedes that the only difference in the Sunni and Shia beliefs is the "significance which Shias afford the twelve Imams, or religious leaders, who came after Prophet Muhammad and were part of the Prophet's family."  Plaintiff's Amended Complaint ¶ 25 [Docket No. 52].  This different belief is not so severe as to require Plaintiff to violate his religion.  At best the joint Muslim services diminishes Plaintiff's spiritual fulfillment.  *Sherman v. Marshall*, 2011 U.S. Lexis 73801 (C.D. Calif. 2011) (emphasis added).

### D.  RLUIPA/RFRA Religious Diet

Plaintiff also claims the food served at ACCF is not lawful for Muslims to eat and violates RLUIPA and RFRA.  Plaintiff's amended complaint lists multiple complaints about the contents in the food and how the food is prepared and served.  Despite offering a list of complaints regarding the food Plaintiff's responses to the defendants' discovery shows Plaintiff has no personal knowledge or any evidence to support any of his complaints.  See Plaintiff's

Responses to Defendants Written Discovery [Docket 65-1].  The defendants asked Plaintiff about each one of his complaints and the only reason offered to support each complaint was that the defendants never objected to the Plaintiff's complaints about the food.  Plaintiff has no personal knowledge regarding how the food in the cafeteria is prepared and he can come forward with no admissible evidence that supports his complaints.  Thus Plaintiff is not entitled to summary judgment on his claims and the CCA Defendants are entitled to summary judgment.

WHEREFORE, PREMISES CONSIDERED, Plaintiff's motion for summary judgment should be denied and the CCA defendants are entitled to summary judgment on all of Plaintiff's claims and such other relief as this Court deems proper under the circumstances.

Respectfully submitted,

CORRECTIONS CORPORATION OF AMERICA,
VANCE LAUGHLIN, JON SHONEBARGER, AND
VICTOR ORSOLITS

By: */s/  William P. Thomas* _____
    Lem E. Montgomery, III (MB No. 100686)
    William P. Thomas (MB No. 102209)

THEIR ATTORNEYS

Of Counsel:

BUTLER, SNOW, O'MARA, STEVENS & CANNADA, PLLC
1020 Highland Colony Parkway
Ridgeland, MS 39157
Post Office Box 6010
Ridgeland 39158-6010
(601) 948-5711

**<u>CERTIFICATE OF SERVICE</u>**

I, William P. Thomas, one of the attorneys for these defendants, do hereby certify that I electronically filed the foregoing with the Clerk of the Court using the online ECF system and mailed a copy by United States Mail with postage fully prepaid thereon to the following non-ECF participant:

> Sefidkar Janali #12202-078
> Adams County Correctional Center CCA
> P.O. Box 1600
> Washington, MS  39190

SO CERTIFIED, this the 2nd day of July 2013.

*/s/ William P. Thomas*

ButlerSnow 16899577v1

8