IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

SEFIDKAR JANALI, #12202-078

VS.                                        CIVIL ACTION NO. 5:11cv119-KS-MTP

CORRECTION CORPORATION
OF AMERICA, ET AL.

ORDER ACCEPTING MAGISTRATE JUDGE'S RECOMMENDATION
AND DISMISSING CASE WITH PREJUDICE, ETC.

This cause is before the Court on Motion for Summary Judgment [63] filed by Plaintiff Sefidkar Janali and Motion for Summary Judgment [65] filed by the Defendants, Vance Laughlin, Victor Orsolits, and Jon Shonebarger, and Report and Recommendation filed by Magistrate Judge Michael T. Parker [70], and the Court does hereby find as follows:

1.  PROCEDURAL HISTORY

On August 11, 2011, Plaintiff Sefidkar Janali, proceeding *pro se* and *in forma pauperis*, filed his Complaint [1] pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971)[1] and 28 U.S.C. § 1331.  Plaintiff is currently incarcerated at Adams County Correctional Center ("ACCC") in Adams County, Mississippi, and his claims arose while he was a post-conviction inmate at ACCC.  Plaintiff asserts claims against Correction Corporation of America (the owner and operator of ACCC), Warden Vance Laughlin, Associate Warden Victor

---

[1] A *Bivens* action mirrors a civil rights action brought under 42 U.S.C. § 1983, the difference being that a *Bivens* action applies to alleged constitutional violations by federal actors, while a Section 1983 action applies to alleged constitutional violations by state actors.  *See Izen v. Catalina*, 398 F.3d 363, 367 n.3 (5th Cir. 2005).

1

Orsolits, and Chaplin Jon Shonebarger. Through his Complaint [1] and Amended Complaint [52], Plaintiff claims that Defendants violated his First Amendment right to free exercise of religion. Also, Plaintiff claims Defendants violated the Religious Land Use and Institutionalized Person Act ("RLUIPA") and the Religious Freedom Restoration Act ("RFRA"). (Amend. Compl. at 30-37.)

Plaintiff is a Shiite Muslim and claims that he should be allowed to attend a worship service apart from Sunni Muslims.[2] The worship service at issue is the Jummah[3] congregational prayer service held on Fridays. Plaintiff alleges that the Jummah service is presided over by a Sunni Muslim. Plaintiff demands a separate Jummah service for Shia[4] Muslims. Plaintiff alleges that other religious denominations are allowed different worship times, yet Muslims are required to attend a unified service. (Amend. Compl. at 5-14.)

Additionally, Plaintiff claims that he should be provided the Halal diet (lawful Muslim diet). When Plaintiff arrived at ACCC, he allegedly was given a choice between regular meals, vegetarian meals, or Jewish Kosher meals. Plaintiff chose the Kosher diet because it was similar to the Halal diet. Defendant Shonebarger allegedly discontinued Plaintiff's Kosher diet because Plaintiff purchased clams which are not allowed on the Kosher diet. According to Plaintiff, clams are allowed as part of a Halal diet. Plaintiff asserts that he should not have to follow Jewish dietary laws and should be provided a Halal diet. (Amend. Comp. at 15-28.)

---

[2] Accordingly to Plaintiff, the "principal difference between Sunni and Shias is the significance which Shias afford the twelve Imams, or religious leaders, who came after Prophet Muhammad and were part of the Prophet's family. Shias consider these twelve imams to be the legitimate successors to Prophet Muhammad and divine in nature, while Sunnis do not." (Amend. Compl. at 5.)

[3] Jummah is also spelled Jum'ah and Jumah in the record.

[4] Shia is also spelled Shi'a in the record.

Plaintiff's claims under the First Amendment, RLUIPA, and RFRA include demands for injunctive relief and monetary damages.

## II.  STANDARD OF REVIEW

When a party objects to a Report and Recommendation this Court is required to "make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1).  See also *Longmire v. Gust*, 921 F.2d 620, 623 (5th Cir. 1991) (Party is "entitled to a *de novo* review by an Article III Judge as to those issues to which an objection is made.")  Such review means that this Court will examine the entire record and will make an independent assessment of the law. The Court is not required, however, to reiterate the findings and conclusions of the Magistrate Judge. *Koetting v. Thompson*, 995 F.2d 37, 40 (5th Cir. 1993) nor need it consider objections that are frivolous, conclusive or general in nature. *Battle v. United States Parole Commission*, 834 F.2d 419, 421 (5th Cir. 1997).  No factual objection is raised when a petitioner merely reurges arguments contained in the original petition.  *Edmond v. Collins*, 8 F.3d 290, 293 (5th Cir. 1993).

## III.  PETITIONER'S OBJECTIONS AND ANALYSIS

Plaintiff's Objections to Magistrate's Report and Recommendations address the two primary complaints of Plaintiff.  One is that the Adams County Correctional Center (ACCC's) religious program for inmates who practice the Islamic faith is designed exclusively for Sunni inmates.  His second objection is that a ACCC's religious diet program for inmates violates CCA's Statement of Work, Code of Federal Regulations

and/or BOP Programs Statements.  Plaintiff goes into an extensive and rambling argument of why the Magistrate's Report and Recommendation is incorrect.  Plaintiff also goes into significant detail as to why the programs at ACCC do not protect his rights and the rights of other Shia inmates by violating his First Amendment right to free exercise of religion.

Prior to addressing the Objections of Plaintiff, the Court will take a look at the rights that Plaintiff has.

The First Amendment to the United States Constitution states: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof."  The framers of the Constitution believed firmly that the right to freely exercise and practice your religion is the most basic of rights that our Constitution needs to protect.  It is the first part of the First Amendment, which is the first part of the Bill of Rights.  A person's right to not have a religion forced upon them and to fully exercise their own religious beliefs according to their own conscience is the most important right that our Constitution specifically lists.  Whether someone agrees with another's religion is immaterial.  All American's should have that right and all other Constitutional rights protected.  Inmates in institutions, such as Plaintiff, continue to enjoy Constitutional rights and courts should  zealously enforce them.

It is established that Plaintiff has the right to practice his religion but because of his incarceration, which resulted from criminal acts perpetrated by Plaintiff, he only may practice that right to the extent that it is "not inconsistent with his status as a prisoner or with legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974).  Therefore, a government regulation, or a prison regulation, may

interfere with the religious beliefs and practices of a prisoner if it is reasonably related to a legitimate penological interest.  *Turner v. Safley*, 482 U.S. 78, 89 (1987).  The *Turner* case sets forth four factors in deciding the reasonableness of a regulation: (1) whether there is a rational relationship between the regulation and the legitimate government interest asserted; (2) whether the inmates have alternative means to exercise the right; (3) the impact that accommodation of the right will have on the prison system; and (4) whether ready alternatives exist which accommodate their right and satisfy the governmental interest.  *Id.*  At 89-90.  Courts must balance the inmates' right to free exercise of religion with the interest of prison officials charged with complex duties arising from the administration of our penal system.  Prison officials are afforded great deference in carrying out their complex duties.  *Report and Recommendation* [70] at page 5.

      Plaintiff in this case agrees that he is afforded the right to worship and to a Muslim service, but complains that he is required to worship with Sunni Muslims and it is very difficult for Plaintiff, who is a Shia Muslim, to worship with Sunnis.  The Magistrate Judge goes into an explanation of the differences, but both are Muslim religions with the main difference being the belief by Shias that the twelve imams are descendants  of Muhammad and are deity.  Sunnis do not believe this.  This is the basic difference in the two sects of Islam.  There are religious services set up for different religions, but not for different sects.  For instance, Christian sects worship together.  Plaintiff voiced his complaints to the prison Chaplin who is in charge of the worship services for the different religions. His response was that separate worship services would be a burden to the staff and add expense during this difficult fiscal climate, that it could not be done in an orderly fashion and that there is some benefit to unified services, since they combat divisiveness.

When the analysis is done with the four *Turner* factors, the Magistrate Judge found and the affidavit shows that there is a legitimate and rational relationship between the regulation requiring joint services and a legitimate government interest asserted.

Factor two is whether the inmates have alternative means to exercise their rights. The Chaplin in his affidavit stated, and is unchallenged by Plaintiff, that in addition to the joint services, the inmates are allowed unlimited time for independent study and worship. They are allowed to pray, meditate, and read religious literature, to possess copies of the Koran, prayer rugs, KUFI caps and religious oils. Also, inmates may pray in the chapel when it is available. Plaintiff, additionally, was offered the opportunity to lead the services, but he declined to do so claiming that he is not qualified, but he also claims that the Sunni Imam that leads the services is not qualified either. The submission proved that Shia Muslims and Sunni Muslims are both afforded the right to lead the worship services.

The third prong of the test is the impact that accommodation of the right will have on the prison system. Proof shows the adverse impacts and they will not be repeated here. The fourth prong is whether a ready alternative exists which accommodates the right and satisfies the governmental interest. Alternatives are given. Therefore, the First Amendment rights that Plaintiff has to exercise his religion are only limited to the extent allowed by *Pell* and *Turner.* Likewise, his RLUIPA and RFRA claims have no merit. Summary judgment is appropriate and Plaintiff's objections lack merit.

The second objection to the Report and Recommendation is that the Magistrate is incorrect when he denied the complaints regarding the dietary restrictions that Plaintiff claims. As the Magistrate Judge found, the Plaintiff has not come forward with any competent summary judgment evidence to show that ACCC does not provide a lawful diet

for Muslims. Plaintiff could chose either the Kosher or Jewish diet which is lawful for Muslims or the vegetarian diet which is also lawful for Muslims. A prison cannot be required to accommodate each diet request and Plaintiff has failed to show that the diets provided substantially burden his religion. Plaintiff's objections lack merit. Accordingly, summary judgment is appropriate on this issue and all other issues.

## IV. CONCLUSION

As required by 28 U.S.C. § 636(b)(1) this Court has conducted an independent review of the entire record and a *de novo* review of the matters raised by the objections. For the reasons set forth above, this Court concludes that Plaintiff's objections lack merit and should be overruled. The Court further concludes that the Report and Recommendation is an accurate statement of the facts and the correct analysis of the law in all regards. Therefore, the Court accepts, approves and adopts the Magistrate Judge's factual findings and legal conclusions contained in the Report and Recommendation. Accordingly, it is ordered that the United States Magistrate Judge Michael T. Parker's Report and Recommendation is accepted pursuant to 28 U.S.C. § 636(b)(1) and that Sefidkar Janali's claims are **dismissed with prejudice**. All other pending motions are denied as moot.

SO ORDERED this, the 13th day of December, 2013.

*s/Keith Starrett*
UNITED STATES DISTRICT JUDGE